UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ALLEN ECKARD,

                    Plaintiff,

        v.

DANIEL STITES,

                    Defendant.

Case No. C19-738-RSM-MLP

REPORT AND RECOMMENDATION

## I.       INTRODUCTION

This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff Gabriel Eckard is a pretrial detainee at the Snohomish County Jail (the "Jail") in Everett, Washington. Plaintiff's complaint alleges that Defendant Daniel Stites' placement of Plaintiff in an observation cell "punished him without due process of the law" because the conditions of the cell were more restrictive than those in the segregation unit. (Dkt. # 5 ("Compl.") at ¶ 21.) Currently before the Court is Plaintiff's motion for summary judgment. (Dkt. # 14 ("Pl.'s Mot. Summ. J.").) Defendant submitted an opposition and cross-motion for summary judgment. (Dkt. # 16 ("Def.'s Cross-Mot. Summ. J.").) Plaintiff submitted a motion to deny Defendant's cross-motion for summary judgment or, in the alternative, grant a continuance so that Plaintiff may conduct discovery. (Dkt. # 22 ("Mot. for Continuance").) Defendant submitted a response requesting

1    Plaintiff's motion for a continuance to conduct discovery be denied. (Dkt. # 21 ("Resp. to Mot.

2    for Continuance").) Defendant also filed an amended motion for judgment on the pleadings (dkt.

3    # 13 ("12(c) Mot.")) to which Plaintiff responded (dkt. # 15 ("Resp.")).

4        As a threshold matter, the Court recommends that Plaintiff's request for a continuance to

5    conduct discovery be denied. The discovery deadline in this matter was October 24, 2019. (Dkt.

6    # 10 (Court's Scheduling Order).) Plaintiff did not move for an extension of the discovery

7    deadline and instead filed his motion for summary judgment before the deadline on September

8    25, 2019. Plaintiff has not presented any reason as to why he could not have conducted discovery

9    during the appropriate time other than to state in a conclusory fashion that he has not had "access

10   to discovery." (Mot. for Continuance at 1.) The Court notes that the claims in this matter arise

11   out of the same events that are the focus of another case filed by Plaintiff, *Eckard v. Lee*, C19-

12   429-RAJ-MLP. In that matter, Plaintiff also filed a motion for summary judgment months before

13   the September 30, 2019 discovery deadline. (*Id.* at Dkt. # 11.) There is currently a pending

14   Report and Recommendation to deny his motion for summary judgment in that matter. (*Id.* at

15   Dkt. # 22.) Because Plaintiff had ample time to conduct discovery, an extension of time is not

16   warranted. [1]

17       As noted above, Defendant also filed an amended motion for judgment on the pleadings,

18   arguing this matter should be dismissed because the Court previously concluded that Plaintiff's

19   allegations regarding being housed in the observation unit failed to state a claim upon which

20   relief could be granted in *Eckard v. Thomas, et al.*, C19-104-RSM-BAT. (*See* 12(c) Mot.)

21

22   _____

[1] The Court also notes Plaintiff is familiar with both discovery and motions practice in this district as he has filed over thirty 42 U.S.C. ¶ 1983 actions since 2018 and has become a three-strike litigant pursuant to 28 U.S.C. ¶ 1915(g). *See, e.g., Eckard v. Stringham, et al.*, C18-898-RAJ; *Eckard v. Woods, et al.*,

23   C18-964-JCC; *Eckard v. Deshev, et al.*, C18-1053-JCC; *Eckard v. Walters, et al.*, C18-1258-RSM-JPD; *Eckard v. Wilmoth*, C18-1259-RAJ; *Eckard v. Caraway, et al.*, C18-1260-TSZ; *Eckard v. Mitchell et al.*, C18-1810-RSM.

REPORT AND RECOMMENDATION - 2

Plaintiff responded to Defendant's motion. (Resp.) The Court will consider the arguments raised in Plaintiff's response to Defendant's amended motion for judgment on the pleadings as well as those raised in his own motion for summary judgment and motion to deny Defendant's cross-motion for summary judgment.

Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends that Plaintiff's motion for summary judgment (dkt. # 14) be DENIED and Defendant's motion for summary judgment (dkt. # 16) be GRANTED. The Court further recommends that Defendant's amended motion for judgment on the pleadings (dkt. # 13) be DENIED as MOOT and Plaintiff's Rule 56(f) denial of motion for summary judgment, or in the alternative, motion for a continuance (dkt. # 22) be DENIED.

## II.    BACKGROUND

Plaintiff's complaint alleges that on December 31, 2018[2], while he was housed in the disciplinary segregation unit, he pushed the emergency call button in his cell despite the fact that there was no emergency. (Compl. at ¶ 6.; Pl.'s Mot. Summ. J. at 1-2.) As a result, Plaintiff was placed in a restraint chair and moved to the observation unit for approximately two hours. (Compl. at ¶¶ 7, 11.) Thirty minutes after Defendant began his graveyard shift, he supervised deputies who removed Plaintiff from the restraint chair and placed him in an observation cell. (Stites Decl. at ¶ 2, 5.)

After Plaintiff was placed in the observation cell, a 30-minute behavior watch was initiated. (*Id.*) Plaintiff's behavior remained escalated and he stated he had a medical emergency,

---

[2] Plaintiff's complaint and motion state these events occurred on "December 30, 2019." (Compl. at ¶ 6; Pl.'s Mot. Summ. J. at 1.) Although Defendant asserts the date was December 30, 2018 (Def.'s Cross-Mot. Summ. J. at 2), Defendant's declaration states it was December 31, 2018, which is consistent with the date on the incident report regarding these events (dkt. # 17 ("Stites Decl.") at ¶2, Ex. A (Incident Report)). The Court presumes December 31, 2018 is the correct date.

despite having just been assessed by medical personnel. (*Id.*, ¶ 6.) Plaintiff continued to state he was experiencing a medical emergency and told Defendant he had pain all over and wanted water. (*Id.*, ¶ 7.) As Defendant left to speak with the deputy on duty in the observation unit, Plaintiff called Defendant a "fucking faggot" and said "I am getting out in a couple months and I will fucking kill you boy." (*Id.*, ¶ 8.) Plaintiff also stated he would obtain Defendant's personal information through a public records request. (*Id.*)

After Defendant left the observation unit, medical personnel assessed Plaintiff again and provided him with water. (*Id.*, ¶ 9.) The medical personnel told Defendant that Plaintiff was vague about what his medical emergency was and that he declined to speak further with them. (*Id.*) Plaintiff also urinated through the cell door, creating a puddle on the floor outside the door. (*Id.*)

Plaintiff alleges that the following day, he was assessed by a mental health counselor. (Pl.'s Mot. Summ. J. at 3.) Plaintiff alleges that the mental health counselor said that she was aware Plaintiff was not a self-harm concern and that he was restrained for pushing the emergency call button. (*Id.*) Plaintiff contends that his placement in the observation cell was not related to a legitimate government objective but was instead a form of punishment and subjected him to conditions of confinement that were more restrictive than other units, all in violation of his Fourteenth Amendment rights. (*Id.* at 1-4.)

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party

1   fails to make a sufficient showing on an essential element of his case with respect to which he

2   has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving

3   party bears the initial burden of showing the district court "that there is an absence of evidence to

4   support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by

5   producing affirmative evidence that negates an essential element of the nonmovant's case, or by

6   establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of

7   persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102

8   (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of

9   material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The

10  Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

11      The opposing party must present significant and probative evidence to support its claim

12  or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

13  "The mere existence of a scintilla of evidence in support of the non-moving party's position is

14  not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d

15  1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with

16  allegations in the complaint, or with unsupported conjecture or conclusory statements."

17  *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

18      **B.      Section 1983 Standard**

19      In order to state a claim for relief under 42 U.S.C. § 1983, a Plaintiff must show (1) that

20  he suffered a violation of rights protected by the Constitution or created by federal statute, and

21  (2) that the violation was proximately caused by a person acting under color of state law. *See*

22  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a Plaintiff

23  must allege facts showing how individually named defendants caused, or personally participated

in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### C.    Due Process

Plaintiff's challenge to the conditions of his confinement as a pretrial detainee raises the issue of his right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979). The Supreme Court has held that a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535. Thus, when evaluating the constitutionality of conditions of pretrial confinement, the proper inquiry is whether those conditions amount to punishment of the detainee. *Id*. While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Id.* at 537. Thus, the test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546. The

1    Supreme Court has further recognized that prison administrators "should be accorded wide

2    ranging deference in the adoption and execution of policies and practices that in their judgment

3    are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at

4    547.

5            Plaintiff's Complaint fails to show that Defendant placed him in the observation cell with

6    the intent to punish him. An unnamed Defendant placed Plaintiff in a restraint chair in the

7    observation unit for pushing an emergency call button when there was no emergency. Plaintiff

8    had also fouled his cell by smearing feces on the door and urinating under the door, which

9    seeped out into the common area. (Stites Decl. at ¶ 4.) Once Defendant began his shift, he

10   released Plaintiff from the restraint chair and placed him in the observation cell because it is

11   easier to decontaminate when an inmate fouls their cell with bodily waste. (*Id.*, ¶ 5.) Plaintiff's

12   behavior remained escalated, and he complained of an alleged medical emergency despite

13   already being assessed by medical personnel. (*Id.*, ¶¶ 6, 7.) Plaintiff then began yelling at

14   Defendant and threatening to kill him. (*Id.*, ¶ 8.) Plaintiff also fouled the observation cell by

15   urinating under the door. (*Id.*, ¶ 9.)

16           The evidence in the record supports the conclusion that Defendant's decision to maintain

17   Plaintiff's placement in the observation cell was not intended to punish him and that it was

18   reasonably related to legitimate government objectives; *i.e.*, maintaining institutional security,

19   preserving internal order and discipline, and addressing a potential inmate health concern.

20   Although Plaintiff classifies the cell as a "suicide observation cell," which he asserts was only

21   used to house inmates who have engaged in acts of self-harm or have expressed suicidal ideation,

22   this conclusory assertion is not sufficient. (Compl. at ¶¶ 9, 11; Pl.'s Mot. Summ. J. at 2.)

23   Defendant submitted evidence that the observation unit had a reduced inmate-to-deputy ratio

which allows staff to more closely monitor inmates who are less able to care for themselves and require closer supervision. (Stites Decl. at ¶ 3.) Defendant also presented evidence that his decision to temporarily maintain Plaintiff's confinement in the observation cell was because the cell was easier to decontaminate when an inmate fouls the cell with his or her bodily waste, which proved to be necessary. (*Id.* at ¶ 5.) Defendant's action was not excessive, especially in light of Plaintiff's disruptive and threatening behavior. The fact that Plaintiff asserts he was not a risk of self-harm or suicide ideation does not undermine the reasonableness of Defendant's action. Accordingly, Plaintiff fails to establish any due process violation arising out of his placement in an observation cell.

Plaintiff also argues that even if the Court finds Defendant did not intend to punish him, the conditions of confinement in the observation cell were punishment in themselves. (Pl.'s Mot. Summ. J. at 7.) Plaintiff specifically takes issue with the fact that during his confinement in the observation cell, he did not have access to amenities that other units have, such as "a bunk; a toilet; sink; faucet with hot and cold running water; a table with sitting stool; and a light switch" as well as windows. (*Id.* at 5.) Instead, Plaintiff only had access to his clothing, a mattress, a blanket, paper, and a hole in the middle of the floor that served as a toilet. (*Id.* at 2-3.)

In considering Plaintiff's claim, it should be noted that the Constitution "does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Conditions of confinement "may be, and often are, restrictive and harsh[.]" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Rhodes*, 452 U.S. at 347). However, an institution must provide "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986) (cited source omitted), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). Here, Plaintiff's temporary placement in an

observation cell with clothing, a mattress, a blanket, and access to medical personnel does not amount to unconstitutional punishment. Although the observation cell might not have had as many amenities as Plaintiff would have preferred, the conditions of the cell, as alleged by Plaintiff, are not sufficiently grave to implicate his Fourteenth Amendment rights. Accordingly, Defendant should be entitled to summary judgment.

### D. Qualified Immunity

Defendant argues he is entitled to qualified immunity in this action. (Def.'s Cross-Mot. at 5.) "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223 (2009).

As the Court has found that Defendant did not violate Plaintiff's constitutional rights, it is not necessary to address qualified immunity.

### IV.    CONCLUSION

The Court recommends that Plaintiff's motion for summary judgment (dkt. # 14) be DENIED and Defendant's motion for summary judgment (dkt. # 16) be GRANTED. The Court further recommends Defendant's amended motion for judgment on the pleadings (dkt. # 13) be DENIED as MOOT and Plaintiff's motion for Rule 56(f) denial of motion for summary judgment, or in the alternative, motion for a continuance (dkt. # 22) be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 10, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Ricardo S. Martinez.

Dated this 13th day of December, 2019.


MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10